IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DAAIYAH GOLDSTEIN, on her own behalf and for all others similarly situated, | : : : : | Case No. 10-CV-01190-DS |
| Plaintiff, | : | |
| v. | : : | |
| THE CHILDREN'S HOSPITAL OF PHILADELPHIA, | : : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                    October  24, 2012

Presently before the Court in this cause of action under the Fair Labor Standards Act

("FLSA") , 29 U.S.C. § 201, *et seq.*, is Plaintiff Daaiyah Goldstein's Motion for Conditional

Certification and for an Order Authorizing Notice to Similarly Situated Persons Pursuant to 29

U.S.C. § 219(b) (Doc. 54) ("Pl. Mot."), the Memorandum of Law in Opposition to the Plaintiff's

Motion for Conditional Certification of her Pre-Shift, Post-Shift, and Meal Break Timekeeping

Claims filed by Defendant Children's Hospital of Philadelphia ("CHOP") (Doc. 58) ("Def. Opp."),

and Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Conditional Certification

(Doc. 59) ("Pl. Reply").  For the reasons set out below, we deny Plaintiff's motion.

Plaintiff worked as a security guard at CHOP from November 2008 to June 2009. (Goldstein

Decl., Pl. Mot. Ex. G, ¶ 2.)  She was designated a non-exempt employee for purposes of the FLSA

and was paid on an hourly basis.  She was regularly scheduled to work 40 hour per week. (*Id.* ¶ 3.)

She alleges that CHOP violated her rights under the FLSA, including her entitlement to premium

pay for work beyond 40 hours in a workweek, by obligating her to work without compensation

before her shift actually began ("pre-shift work"), during her unpaid meal break ("meal break

work"), and upon the completion of her shift ("post-shift work").  (*Id.* ¶¶ 7, 12, 17, 26, 30.)  In

support of her efforts to expand her suit into a collective action against CHOP, she has also asserted

that CHOP had common policies and practices in place at the time of her employment that brought

about the FLSA violations that she allegedly suffered and that also caused other similarly-situated,

hourly-rate employees to suffer the same harm.  (*Id.* ¶¶ 5, 13-15, 20, 22, 24, 31.)  She seeks the

certification of a class that would include all Pennsylvania residents that CHOP employed on an

hourly basis at any time during the period of December 20, 2007 to the present.  (Pl. Mot., Prop.

Order; Second Am. Compl. ¶ 8.)  The issue presented by Plaintiff's motion for conditional

certification as to these three aspects of allegedly uncaptured time worked by CHOP employees is

whether she has met the requisite showing that other non-exempt employees suffered from FLSA

violations in a similar manner, that is, in working but not being paid for pre-shift work, meal break

work, and/or post-shift work.[1]

## LEGAL STANDARD

The penalties provision of the FLSA provides in part that:

> Any employer who violates [the minimum wage or maximum hours
> provisions] of this title shall be liable to the employee or employees
> affected in the amount of their unpaid minimum wages, or their
> unpaid overtime compensation, as the case may be, and in an
> additional equal amount as liquidated damages.
>
> \*\*\*
>
> An action to recover [such] liability . . . may be maintained against
> any employer . . . in any . . . court of competent jurisdiction by any
> one or more employees for and in behalf of himself or themselves and

---

[1] Plaintiff has also alleged that she was not compensated for time spent maintaining her work uniform.  The issue of the propriety of that claim for conditional certification as a collective action is the subject of a separate motion.

other employees similarly situated.

29 U.S.C. § 216(b).  By virtue of a 1947 amendment of the statute, an "opt-in" process was developed for maintenance of collective actions under the FLSA, providing that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  *Id.*[2]

Courts typically utilize a two-tiered approach to the handling of this "opt-in" process. Initially, a plaintiff must demonstrate a "modest factual showing" that there is a "nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees."  *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011).[3]  If this "modest factual showing" standard is met, notice to potential class members will be permitted and the parties would then engage in further discovery to determine whether the various opt-ins who might appear are, in fact, similarly situated to the named plaintiff.  If the heavier burden at this stage is met, the matter may then proceed to trial as a collective action.  *See id.*

---

[2] This procedure differs significantly from the "opt-out" provisions of class actions under the Federal Rules of Civil Procedure.  This provision nonetheless manifests Congress's intent to encourage collective actions implicitly, if not explicitly, in that it recognizes the relative disparate status of a typically aggrieved employee and a typical employer.  It also fosters the effective case management objectives of Rules 1 and 16 of the Federal Rules of Civil Procedure.

[3] The Third Circuit's decision in *Symczyk* clarified any uncertainty as to whether a plaintiff can meet her initial burden by the "mere allegation" or "substantial allegation" standard utilized by some district courts, *see, e.g., Lugo v. Farmer's Pride*, Civ. No. 07-749, 2008 WL 638237 (E.D. Pa. Mar. 7, 2008), and now gives us clear direction that the "modest factual showing" standard must be applied.  It is this standard which the Third Circuit has made clear "works in harmony with the opt-in requirement to cabin the potentially massive size of collective actions – [and] best comports with Congressional intent and with the Supreme Court's directive that a [trial] court 'ascertain [ ] the contours of [a collective] action at the outset.'"  *Symczyk*, 656 F.3d at 193 (quoting *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 172 (1989)).

**DISCUSSION**

In support of her obligation to make the "modest factual showing" that she is similarly-situated to any or all of the various classifications of non-exempt employees of CHOP working in Pennsylvania during the period at issue, Goldstein has filed a declaration in which she recounts the circumstances in which CHOP allegedly obligated her to undertake work functions before her shift began, during her 30-minute unpaid meal break, and after her shift ended.  Specifically with respect to pre-shift and post-shift work, she declared that her supervisors regularly required her to do things such as pass down or receive notifications, receive orders, complete logs or reports and check out or return equipment.  (Goldstein Decl., Pl. Mot. Ex. G. ¶¶ 7, 25.)  With respect to the meal break work, she pointed out that the timekeeping system utilized during the period of her employment would automatically deduct 30 minutes from her daily total hours worked, that she had to work "about 60% of her unpaid meal breaks without compensation," and that the process CHOP utilized for her to request payment for missed meal breaks "often failed," since approval to work during the break was required in advance and the supervisors who could authorize this work "were not usually available."  (*Id.* ¶¶ 15-21.)

**Applicable policies**

Both parties identified certain relevant policies and practices in their papers.  Goldstein points out that the "Hours of Work" policy provides that all non-exempt employees are required to "swipe in and out" at the beginning and end of each work day and are scheduled to work a minimum of 40 hours per week but that they are entitled to a one-half hour uninterrupted meal break of 30 minutes if they work a minimum of five hours in a single day. (Pl. Mot. at 3-4.)  Goldstein also points out that CHOP's "Standard Pay Practices" policy requires that all overtime work and hours should be

approved in advance by appropriate supervisors and should be avoided unless required to maintain patient care or efficient operations.  (Pl. Mot. at 4-5.)

CHOP notes that the policy also provides that "work performed before scheduled starting time, through all or part of lunch, or overtime worked without advanced approval (with or without management's knowledge) is considered hours worked and is included in calculating an employee's entitlement to overtime compensation." (Def. Opp., Ex. 15 at pp. CHOP 00746-00747.) CHOP also notes that, pursuant to its "Compensation Program," it pays employees for all time worked, regardless of whether the time was properly authorized and that it addresses unauthorized work (including unauthorized overtime work) by employees through its discipline protocols. (*Id.*) CHOP also insists that its timekeeping system keeps track of time worked from the time that the employee swipes in at the beginning of her work day until the point where she swipes out at the end of the workday and, with respect to the meal break, that the employee's timekeeper and/or the employee "is expected to cancel the entire 30-minute meal break deduction in the electronic timekeeping system" when the employee is called upon to work during any part of that time, "which results in the employee being compensated for the entire 30-minute period."  (Def. Opp., Ex. 13 at p. CHOP 00778.)

**Plaintiff's evidentiary proffer**

In her declaration, Plaintiff asserts:

> As a result of my experience working with, talking to and observing my co-workers during the relevant period, I believe that defendants' other employees were subjected to the same [pre-shift, meal break and post-shift] work polices and practices, and affected the same way by them.

(Goldstein Decl., Pl. Mot. Ex. G, ¶¶ 13, 22 & 31.)  While we can accept from her declaration that

she believes that others were "subjected to the same . . . work policies and practices, and affected the same way by them," she provides no indication of how she came to form this belief and, thus, whether there is a reasonable basis for it.  Her declaration makes reference to the circumstances of other employees with no particularity and in only the most general terms.  Further, the foundation offered for her belief is limited to her "experience working with, talking to and observing my co-workers."  Her declaration is bereft of any particular allegations that work that she might have observed being performed before or after the time of a co-worker's scheduled shift was, in fact, pre- or post-"swipe," nor does she purport to have any firsthand knowledge that any co-workers she observed working outside of their normal shift period, or during the meal break period, were not, in fact, properly paid in accordance with the FLSA.  While her declaration implicates a hearsay source for her belief, she does not even identify what it was that she learned from "talking to" her co-workers.  She also provides nothing to support her proposition that non-exempt employees at the hospital who are not security guards were suffered to work in similar manners and were not compensated as required by the FLSA.  Moreover, Plaintiff's "belief" that other employees were similarly-situated to her has not been corroborated by even single "opt-in" from any of the 90 security guards employed by CHOP during the relevant period nor from any of the 5,000 to 6,000 estimated non-exempt employees working for CHOP during the relevant time.  *See* Costa Decl., Def. Opp. at  Ex. A, ¶ 3; *id.* at Ex. 11 (identifying number of employees in job titles falling within proposed class).  We are unable to conclude that this quantum of evidence rises to the level of a "modest factual showing" such as to permit conditional certification.

**Relevant caselaw**

The circumstances of Goldstein's petition bear marked similarity to those in *Wright v. Lehigh Valley Hospital*, Civ. No. 10-431, 2010 WL 3363992 (E.D. Pa. Aug. 24, 2010). There the district court denied a conditional certification motion filed by a registered nurse who claimed that she had not been paid overtime for work duties that the hospital required her to perform before and after her scheduled shift and during interruptions to her unpaid meal break. In support of her petition, Wright asserted that "throughout her employment she worked along side other registered nurses who similarly worked before and after their shifts without being properly paid." *Wright*, 2010 WL 3363992, at *1. In addition to her own declaration, she submitted a declaration from her attorney that reported upon a telephone conversation he had with an anonymous nurse who was also employed at the hospital. This co-worker told counsel that she, too, was obligated to report to work prior to the start of her shift, to stay after the end of her shift, and that she had her meal break interrupted, and that she was not always properly compensated for this additional work. *Id.* at n.2.

The district court concluded that Wright had failed to proffer any admissible evidence that would support the motion for conditional certification as a collective action. The court noted that she made no reference to anyone who was prepared to come forward as an "opt-in" to the proposed class and that while her declaration might have supported an individual claim under the FLSA, her assertion that others may have been subjected to the same violation was not supported. *Id.* at *4. The district court found little evidentiary value for certification purposes in counsel's declaration regarding his telephone conversation with the nurse who wished to remain anonymous in that it was "rife with inadmissible hearsay" and because the anonymity of this source prevented the court from assessing how similarly situated she may have been to Wright. The court characterized "[t]he

conspicuous dearth of record evidence of a factual nexus between Wright's experiences and those of other [registered nurses employed by the defendant] [as] fatal to the proposed class," particularly after Wright "had ample time to recruit other registered nurses to support her claim." *Id.* at *4. *See also id.* (citing *Kuznyetsov v. West Penn Allegheny Health Systems, Inc.*, Civ. No. 09-379, 2009 WL 1515175 at *3 (W.D. Pa. June 1, 2009), and *Harrison v. McDonald's Corp.*, 411 F. Supp.2d 862, 866 (S.D. Ohio 2005), for the proposition that hearsay statements cannot be considered in the determination of whether other employees are similarly situated).

The court applied similar criteria to a request for conditional certification in *Holley v. Erickson Living*, Civ. No. 11-2444, 2012 WL 1835738 (E.D. Pa. May 21, 2012). There, the plaintiff worked as a nurse in one of two retirement communities operated by defendant Erickson. She alleged that the defendant obligated her to perform work pre-shift for which she was not compensated. She sought conditional certification of all non-exempt employees at the two facilities as similarly-situated to her with respect to performance of pre-shift work based upon what she alleged was a requirement that all employees arrive early to clock in before the scheduled start of their shift. She also sought conditional certification with respect to non-exempt employees who were not compensated for work during their meal period in which they were sometimes required to work and for which they were allegedly not compensated. Holley established that the timekeeping system automatically deducted 30 minutes from the employee's total work hours for the meal break. While there was a procedure whereby this automatic 30-minute deletion of work time could be reversed if the employee was called upon to work during the meal period, Holley asserted that the reversal process was one which was "routinely discouraged" or "ignored." *Id*. at *2.

Relying upon *Symczyk* and several district court cases and using the "modest factual

showing" standard, the *Holley* court characterized the obligation of the plaintiff as "to produce some evidence beyond pure speculation of a factual nexus between the manner in which the employer's alleged policy affected her and in the manner in which it affected other employees." *Holley*, 2012 WL 1835738, *3 (citing *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011)). The court found that, with respect to the pre-shift work, Holley had not offered any specific evidence by way of declarations, opt-in notices or otherwise as to the conditions affecting other employees generally.  The only evidence presented was the plaintiff's own affidavit and an indication of one opt-in who had worked at the same facility as the plaintiff but offered no firsthand knowledge about the situation of employees at the second location.  Accordingly the court denied Holley's request for conditional certification as to employees required to perform the pre-shift work at both of the facilities operated by the defendant that the plaintiff had sought.  With respect to the violation arising from work during the unpaid meal period, the *Holley* court found a sufficient factual nexus between Erickson's policies regarding meal time and the plaintiff's declaration to justify conditional certification, as it was undisputed that the defendant's timekeeping system deducted 30 minutes from the employee's time worked for a meal period, whether the employee worked or not. *Holley*, 2012 WL 1835738, *5-*6.[4]

---

[4] The defendant in *Holley* does not appear to have presented any evidence about how the automatic 30-minute meal break deduction could be reversed if the employee did, in fact, work. Such is not the case in the matter before us, where CHOP has offered a substantial quantum of evidence reflecting a policy that the employee's timekeeper was "expected to cancel the entire 30 minute meal break deduction" if the employee was required to work any part of the 30 minute meal break and where CHOP presented evidence supported by declaration that the meal deduction was reversed in the electronic timekeeping system over 73,000 times between December 2007 and December 2010 and over 38,000 times from December 2007 through May 2009 – time which included the November 2008 to June 2009 period when Goldstein was employed by CHOP. (Costa Decl., Def. Opp. at Ex. A ¶¶ 21, 24.)
     We appreciate that it is not the function of the Court at this stage to weigh one aspect of

Goldstein's motion presents many of the same deficiencies that prevented conditional certification in *Wright* and *Holley*. She provided no direct evidence in her declaration that other employees were similarly situated to her with respect to CHOP's policies and practices, nor is there any evidence of opt-ins despite 10 months of discovery. Plaintiff's declaration refers only to knowledge which she has gleaned from her "experience working with, talking to and observing my co-workers during the relevant period," causing her to "*believe* that [d]efendant's other employees were subjected to the same [pre-shift, meal break or post-shift work] policies and practices, and affected the same way by them." *See* Goldstein Decl., Pl. Mot. at Ex. G, ¶ 13 with respect to "pre-shift work," ¶ 22 with respect to "meal break work," and ¶ 31 with respect to "post-shift work") (emphasis added). While Goldstein may well have observed certain co-workers performing work during meal breaks or before or after their shift, she gives no specific information to understand how she would have learned whether any other employees she so observed would or would not have caused that time spent to be recaptured. The evidence produced by Goldstein in this context thus patterns the evidence the court rejected in *Wright*, where it was noted:

> Wright has failed to proffer any admissible evidence that would allow
> this Court [to] infer that other current or former registered nurses
> endured deprivations similar to those Wright allegedly experienced.
> Although she makes repeated references to similarly situated nurses,

---

evidence over another or to resolve disputed facts. We believe it to be appropriate, however, to examine all relevant evidence offered by the parties in the necessary context of CHOP's other policies and practices. Here, CHOP does not contest that it generally deducts the 30-minute obligatory meal break from the employee's record of hours worked. At the same time, however, it has also described its reversal policy and provides evidence to indicate that the reversal policy is routinely followed. Plaintiff offers nothing to rebut or suggest that the reversal policy was not routinely followed with any similarly situated non-exempt employees. We are not so constrained as to review a plaintiff's evidence in a vacuum. *See, e.g., Bramble v. Wal-Mart Stores, Inc.*, Civ. No. 09-4932, 2011 WL 1389510, *5 n.6 (E.D. Pa. Apr. 12, 2011) (noting the propriety of examining all of the relevant evidence rather than relying merely upon plaintiff's evidence).

> she fails to name a single registered nurse – other than herself –
> willing to opt-in to the proposed class. . . . Wright's argument that
> Defendants must have violated other nurses' rights because their
> uniform policies and procedures allegedly violated her rights is
> insufficient to satisfy the modest factual showing test.  She must
> come forth with admissible evidence to satisfy her burden that
> putative class members are similarly situated.  Plaintiff has set forth
> evidence that she has an individual claim under the FSLA. . . . [B]ut
> her unsupported assertion that other registered nurses must have been
> subjected to these same conditions is insufficient to sustain her
> minimal burden.

*Wright v. Lehigh Valley Hospital*, Civ. No. 10-431, 2010 WL 3363992, *4 (E.D. Pa. Aug. 24, 2010).

Golstein has failed to make a modest factual showing that other non-exempt employees are similarly situated to her.  We are unwilling, on this record, to subject the defendant to the burdens associated with a § 216(b) collective action.  The motion will be denied.  An appropriate order follows.