IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAAIYAH GOLDSTEIN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 10-1190 |
| | : | |
| THE CHILDREN'S HOSPITAL OF | : | |
| PHILADELPHIA | : | |

## MEMORANDUM OPINION

DAVID R. STRAWBRIDGE                                              February   22, 2013
UNITED STATES MAGISTRATE JUDGE

Presently before the Court is Plaintiff's Supplemental Motion for Conditional Certification of her Uniform Maintenance Claim (Doc. 62), the Children's Hospital of Philadelphia's ("CHOP") Memorandum of Law in Opposition to the Plaintiff's Motion for Conditional Certification of her Uniform Maintenance Claim (Doc. 68), and Plaintiff's Reply in Support of Conditional Certification of her Uniform Maintenance Claim (Doc. 71). For the reasons set out below, we will grant Plaintiff's motion in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff worked as a security guard at CHOP from November 2008 to June 2009. She was designated a non-exempt employee for purposes of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and was paid on an hourly basis. She was regularly scheduled to work shifts totaling 40 hours per week. As is pertinent to this motion, she alleges that CHOP violated her rights under the FLSA, including her entitlement to premium pay for work beyond 40 hours

---

[1] We presume familiarity with the facts and issues discussed in our Memorandum Opinion of October 24, 2012, resolving Plaintiff's earlier motion for conditional certification (Doc. 54) regarding other aspects of her FLSA claim against CHOP.

in a workweek, by not recording time she spent outside of her regularly-scheduled work shifts in maintaining the uniform that she was required to wear while on duty. In support of her efforts to expand her suit into a collective action, she has also asserted that CHOP had common policies and practices in place at the time of her employment with respect to required uniforms or appearance standards that render her similarly-situated to all other non-exempt employees, none of whom were compensated for time spent laundering their work attire. She seeks the certification of a class that would include all Pennsylvania residents that CHOP employed on an hourly basis at any time during the period of December 20, 2007 to the present[2] who were required to launder their own uniforms.

## II.     LEGAL STANDARDS

### A.     Hours worked under the FLSA

The FLSA provides, *inter alia*, that employers must pay employees at least a minimum wage for all "work" performed, as well as compensate them at the rate of "time –and-one-half" for hours worked in excess of 40 in a work week. Department of Labor regulations clarify that "work" time includes time spent on tasks not requested but suffered or permitted by the employer to be performed, 29 C.F.R. § 785.11, including "work performed away from the premises or the job site, or even at home." *Id.* § 785.12. The regulations stress that an employer "cannot sit back and accept the benefits without compensating for them." *Id.* § 785.13.

The Portal-to-Portal Act of 1947, however, enacted various amendments to the FLSA in

---

[2] Plaintiff's motion defines "the relevant period" as "[f]rom December 2007 to the present." (Pl. Mot. at 2-3.) This is presumably based upon the limitations period potentially applicable to her FLSA claim, which was not filed until December 20, 2010. (Doc. 24.) We discuss, *infra*, the appropriate time frame for the claim conditionally certified as a collective action here.

response to judicial decisions that had resulted in unexpected liabilities for employers under the FLSA. It provides that employers are "relie[ved] from liability and punishment" under the FLSA for failure to pay overtime compensation under the following circumstances:

> (a) Activities not compensable
>
> Except as provided in subsection (b) of this section [relating to "[c]ompensability by contract or custom"], no employer shall be subject to any liability or punishment under [the FLSA] ... on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee ...
>
>> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>>
>> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. . . .

29 U.S.C. § 254. The Supreme Court has defined non-compensable "preliminary" and "postliminary" activities as set out in § 254(a)(2) as those which are not "an integral and indispensable part of the principal activity of the employment." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). The Court has also explained that "the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity' under *Steiner*." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 39 (2005). Courts have also noted that these two terms are "not synonymous": "'Indispensable' means 'necessary.' 'Integral' means, *inter alia*, 'essential to completeness'; 'organically joined or linked'; 'composed of constituent parts making a whole'."

*Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007) (citations to Webster's Dictionary omitted). Applying these principles, courts have found the sharpening of a knife "integral" to the carving of a carcass, a principal activity of a butcher, *Mitchell v. King Packing Co.*, 350 U.S. 250, 263 (1956); the powering up and testing of an x-ray machine "integral" to the taking of x-rays, a principal activity of an x-ray technician, *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 707 (2d Cir. 2001); and the feeding, training, and walking of a police dog "integral" to the work of a K-9 officer, *Reich v. New York City Transit Auth.*, 45 F.3d 646 (2d Cir. 1995).

### B. Collective actions

The penalties provision of the FLSA provides in part that:

> Any employer who violates [the minimum wage or maximum hours provisions] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. … An action to recover [such] liability . . . may be maintained against any employer . . . in any . . . court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b). Each aggrieved employee must affirmatively elect to join such a collective action, as the statute also provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id.*

Courts utilize a two-tiered process to facilitate this "opt-in" approach to a collective action. Initially, the plaintiff seeking to maintain a collective action must demonstrate that the employees in the putative class are similarly situated to her. This requires her to make a "modest factual showing," by producing "some evidence, 'beyond pure speculation,' of a nexus" between

the manner in which the employer's policy or other actions affected her and the manner in which it affected other employees. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011) (citation omitted). If this "modest factual showing" standard is met, notice to potential class members will be permitted and the parties would then engage in further discovery to determine whether the various opt-ins who appear are, in fact, similarly situated to the named plaintiff such that the matter should proceed as a collective action. *See generally Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 536-37 (3d Cir. 2012).

## III. DISCUSSION

The issue presented by Plaintiff's motion for conditional certification as to this aspect of uncaptured time allegedly worked by CHOP employees is whether she has met the requisite factual showing that she and other non-exempt employees have similar FLSA claims against CHOP for having spent time maintaining a uniform that they were required to wear to work and without being paid by CHOP where this caused them to exceed 40 hours of work per week.

CHOP does not dispute that it did not permit employees to launder their uniform during their shift nor seek to capture any time its hourly uniformed employees spent cleaning, pressing, or otherwise maintaining their work uniforms at home. It contends, however, that such time is not compensable under the FLSA and that no employees are "similarly-situated" to Plaintiff with respect to a viable FLSA claim. CHOP also contends that Plaintiff's claims concerning its uniform maintenance policy are not susceptible to common proof across the 68 job titles in which employees are required to adhere to some sort of uniform requirement, or even within Plaintiff's own department of security guards because of the variable uniforms and laundering activities and the variability of the indispensability of a neat and clean uniform to the

5

performance of the various positions.[3]

We begin first with a consideration of whether Goldstein is "similarly situated" to other security guards such that it is appropriate for them to seek to recover liability for unpaid overtime compensation collectively under § 216(b). We then consider the question of whether Goldstein is "similarly situated" to the broader class of employees that she seeks to represent.

### A.  Security Department uniformed employees

At all times during Goldstein's employment, she was subject to Standard Procedure 116, the CHOP Security Department's policy concerning "Dress Code/Uniform Inspections." *See* Declaration of Michael L. Brooke, ¶ 3 (stating that policy in effect "continuously since before 2007"). (Def. Resp. at Ex. 3) [ECF Doc. 68-6]. That policy describes the "uniform to be worn

---

[3] CHOP also argues that Plaintiff should not obtain conditional certification because she is not "temporally similarly situated" to the proposed opt-in plaintiffs in that her potential period of recovery would extend only from November 2008 to June 2009 and any future opt-in plaintiffs could recover only for periods post-dating, at this point, February 2010 at the earliest, due to the FLSA's limitation period. (Def. Opp. at 23-26.) *See, e.g., Hall v. Guardsmark, LLC*, Civ. A. No. 11-213, 2012 WL 3580086, *6-*8 (W.D. Pa. Aug. 17, 2012) (finding lack of temporal similarity sufficient to deny conditional certification where plaintiffs had not explained how they could compare themselves to other employees after they had left company's employ and given departure of particular supervisor who had allegedly instructed them to work off-the-clock in violation of employer's written policy).

Defendant identifies no other authorities denying conditional certification on this basis. We also find the facts of *Hall* distinguishable from this case. In *Hall*, the two plaintiffs contended that a particular manager instructed them to perform work off-the-clock, in contravention of a company policy. The plaintiffs seeking conditional certification of a larger class had no knowledge as to whether this manager instructed other employees similarly, nor whether any employees worked off-the-clock after that manager left the company. There was no evidence that any other supervisor besides that one instructed any employees to work off-the-clock. That manager's employment at the company ended before the period at issue in the class litigation. Here, there is evidence of no change in the policy or practice of CHOP with respect to uniform maintenance requirements or policy enforcement, *see* Brooke Decl. ¶ 3, *infra*, such that any lack of temporal proximity of Goldstein's period of employment and that of the prospective opt-in plaintiffs is relevant to the question of whether they are similarly-situated.

6

on duty" --- an issued uniform shirt and issued uniform pants, black socks and black shoes --- and further provides in relevant part:

> **I**     **Principle:**
>
> An Officer's personal appearance and uniform are essential to the professional image of security personnel who must maintain frequent contact with the public as a representative of the hospital. … Furthermore, some of the guidelines set forth below protect the individual Officer or others from potential physical harm committed by aggressive individuals.
>
> \*\*\*
>
> **III**     **General:**
>
> A     The uniform is the most important aspect of a security officer's personal appearance. The security officer often represents the initial impression that patients or visitors have of the Hospital during this initial contact. Additionally, this is when the Officer has an opportunity to gain the respect of the people they are interacting with through their professional demeanor and appearance.
>
> \*\*\*
>
> **VI**     **Uniform Maintenance**
>
> \*\*\*
>
> B     Uniforms shall be clean, well pressed, worn neatly, and fully buttoned.
>
> \*\*\*
>
> VII [sic] **Uniform Inspections**
>
> A     All uniformed security personnel will be inspected at the beginning of their shift by the shift supervisor.
>
> B     Any violation of the uniform policy will be documented and may be [a]ddressed through disciplinary action.
>
> C     If a supervisor deems that an Officer's appearance is detrimental enough [t]o the normal operations of the

> department, he or she may be sent home [u]ntil such issues
> are resolved.

Security Department Standard Procedure 116 (Def. Resp., Ex. 3-A).

Plaintiff contends that, because CHOP did not permit her or the prospective class members to clean, press, or otherwise maintain their work uniforms "on the clock" at their work sites, they "had no alternative but to perform the required uniform maintenance work at home and 'off the clock,' during hours they could otherwise have spent as they chose," and that they regularly spent between one to three hours each week "separating their work uniforms from their street clothes and spot-cleaning, washing, drying and ironing their uniforms after each use" to comply with the appearance policies. (Pl. Mot. at 6.) In her attempt to obtain conditional certification of the broad class that she proposes, she cites to two cases in which "[c]ourts have conditionally certified uniform maintenance claims on evidence less substantial than here," (Pl. Mem. at 12, citing *Outlaw v. Secure Health, L.P.,* No. 3:11cv602, 2012 WL 3150582 (M.D. Pa. Aug. 2, 2012), and *Dinkel v. Medstar Health, Inc.*, Civ. A. No. 11-00998 (CKK), 2012 WL 3062461 (D.D.C. July 29, 2012)), and one case, resolving a motion to dismiss, that noted that time spent on uniform maintenance was "not inherently non-compensable." (Pl. Mem. at 12, citing *Attanasio v. Community Health Systems, Inc.*, Civ. A. No. 3:11-CV-582, 2012 WL 1038718 (M.D. Pa. Mar. 27, 2012).)

In considering Plaintiff's request for conditional certification of a class, we do not purport to address the "legality" of Plaintiff's claim that CHOP violated the FLSA in not compensating her (or others) for time spent laundering and/or pressing uniforms. We appreciate that the court did just that in *Schwartz v. Victory Security Agency, LP*, No. 11cv0489, 2011 WL 2437009 (W.D. Pa. June 14, 2011) (Schwab, J.), cited by CHOP, when it found time spent in cleaning and

8

maintaining work uniforms and equipment not integral and indispensible to the principal activity of security guards in providing security services and thus not compensable. The court's action in *Schwartz*, however, was taken in response to the employer's motion to dismiss. The weight of authority on conditional certification, by contrast, is that the court's task is to examine the similarity of the situation of the employees with respect to the practice that is alleged to violate the FLSA. *See, e.g., Karlo v. Pittsburgh Glass Works, LLC*, 880 F. Supp.2d 629, 643 (W.D. Pa. 2012), *motion to certify appeal denied,* Civ. A. 10-1283, 2012 WL 2975400 (W.D. Pa. July 20, 2012) ("The thrust of the Court's inquiry at this juncture—i.e., at the conditional certification stage—'is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are "similarly situated" under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.'"), *citing Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *Krueger v. N.Y. Tel. Co.,* Civ. Nos. 93-178, 93-179, 1993 WL 276058, *2 (S.D.N.Y. July 21, 1993) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine whether a 'similarly situated' group exists.")); *Owens v. Bethlehem Mines Corp.,* 108 F.R.D. 207, 210 (S.D. W. Va. 1985) ("[A]t this point the Plaintiff does not have to prove that there was a class of employees which was subjected to discrimination by [the defendant]. This, of course, is the ultimate question. The Plaintiff only has to show that a group of employees similarly situated to one another are claiming discrimination."); *Williams v. Owens & Minor, Inc.*, 2009 U.S. Dist. LEXIS 102304, *9 (E.D. Pa. Oct. 9, 2009); *Outlaw v. Secure Health, L.P.,* No. 3:11cv602, 2012 WL 3150582, *3 (M.D. Pa. Aug. 2, 2012) (citing *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 63-64 (E.D. Pa. 2009) for proposition that courts are "careful" at Stage One "not to delve into the merits of the case" or make credibility determinations).

As we are presented neither with a motion to dismiss nor for summary judgment, where Plaintiff must support her claim and survive summary judgment with reference to particular facts, we focus instead on the similarity of the circumstances of the security guards by virtue of the common policy that applies to them regarding uniform maintenance. We do not purport to resolve disputed facts, such as the rigor with which CHOP does or does not enforce its appearance policies.[4] Rather, we focus here on the common aspects of the situation of Plaintiff as a security guard and that of other security guards.

Plaintiff has demonstrated that CHOP's security guards were (and are) required to present in a "clean, well pressed" particular uniform in compliance with CHOP's written expectations and requirements. There is no evidence that this uniform varied from outpost to outpost, as was the case in *Williams v. Securitas Security Services USA, Inc.*, Civ. A. No. 10-7181, 2011 WL 3629023 (E.D. Pa. Aug. 17, 2011) (Bartle, J.), another case cited by CHOP. *See id.* *5 (denying conditional certification as to security guards deemed not similarly situated due to variety of different uniforms worn depending on the needs and requirements of the facility to which they are detailed). Moreover, in light of the fact that persons employed as Security Officers were required to wear the same uniform throughout Plaintiff's employment, and given that CHOP

---

[4] We note that CHOP has presented declarations from various department heads concerning how uniform or appearance policies are enforced in their departments. One of these is from Michael L. Brooke, who has been the Director of the Security Department since 2004. We do not consider any factual disputes created by his declaration to be material to the motion before us. The conditional certification motion does not implicate summary judgment questions such that the parties might seek to convince us of what a reasonable jury could or could not possibly find based on the record. Rather, the conditional certification motion seeks a determination of whether the employees in the proposed class are similarly situated from having been subjected to the same policy. We consider it appropriate for Plaintiff to rely upon CHOP's written policies in this regard.

10

does not attempt to rebut Plaintiff's assertion that the uniform of security guards has not changed since her period of employment, we find other security guards whose employment post-dated Goldstein's are nonetheless similarly situated to Plaintiff for purposes of conditional certification under 29 U.S.C. § 216(b) on this issue.

We conclude that Goldstein has presented "evidence, beyond mere speculation, of a nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk*, 656 F.3d at 193.[5] We will grant her motion for conditional certification as to a class of security guards.

B. **Other uniformed employees**

Plaintiff also, however, requests conditional certification of a broader-range of employees. She relies upon CHOP's system-wide "Employee Appearance" policy, which she contends required employees to "clean and press their work uniform and maintain levels of hygiene and uniform care that would avoid any adverse effect on patient care or interactions with patients, hospital visitors, or co-workers," and which also required them to expend time off the clock at home. (Goldstein Supp. Decl., Pl. Mot. Ex. B ¶ 8) [ECF Doc. 62-1 at 32].

At all times relevant to this litigation, CHOP has maintained Human Resources Policy

---

[5] We appreciate that Plaintiff has not presented information on how much time any other security guard spent on uniform maintenance. As it appears, however, that security guards regularly were assigned to work 40 hours per week in shifts, it would appear that time spent on uniform maintenance, if compensable, would represent unpaid overtime hours subject to the FLSA's provisions. We deem the question of how much time employees may have spent on these activities as one to be explored after the opt-in process identifies other prospective plaintiffs and may be one that the Court re-visits before final certification. Similarly, any question as to the activities required to maintain the uniform in compliance with CHOP's appearance policy and the indispensability of it for the principal activity of their work providing security can be an appropriate subject for a dispositive motion. That motion, however, is not before us.

11

No. 5-7 regarding "Employee Appearance," which applies to "[a]ll employees of [CHOP] . . . unless otherwise noted." The policy provides, in relevant part:

> **PURPOSE:**
>
> To establish an appropriate consistent professional employee appearance and identification standard. Employees are expected to dress in a manner that presents a professional and neat personal appearance. It is also expected that all employees will maintain normal and reasonable personal hygiene and grooming standards that in no manner distracts or could have an adverse effect on patient care, interaction with patients, co-workers, parents and visitors, or other work related interactions.
>
> **POLICY:**
>
> Employees' dress, hygiene and grooming should be appropriate to the work situation. Neat and clean dressing, grooming and identification are important to good patient care, satisfaction of patients and their families and good employee-patient relations.

(Pl. Mot. at Ex. H.) [ECF Doc. 62-2 at 2.] Under a section of the policy described as "Procedures," which addressed the requirements to wear name badges, to avoid displaying visible tattoos or unusual piercings or wearing clothing or accessories that present a safety hazard, and to wear clothing that is "regular and customary" for an institutional or business environment, the policy notes: "Clothes should be clean and pressed." (*Id.*)

Notwithstanding the degree of uniformity in CHOP's underlying written appearance policies and the fact that violation of the appearance policy could subject the employee to discipline, we find that CHOP has raised valid questions about the similarity of the claims that could be raised by the employees in the various job titles for time spent on uniform maintenance. Our concerns arise from the fact that the determination of the compensability of such time pursuant to the Portal-to-Portal Act will require an understanding of what the principal activity or activities are for the 68 or more job titles encompassed within Plaintiff's prospective class and an

12

assessment of whether the uniform maintenance activities of the employees in the various job titles could be considered integral and indispensible to the performance of those principal activities.

The record here before us demonstrates that, due to additional department requirements, the dress requirement varies widely among the various departments from which Goldstein would solicit opt-in fellow plaintiffs. We also appreciate that the principal activities of the various job titles are so variable that even maintenance of identical uniforms may not bear the same "indispensable" relation to the job from one position to another. Thus, the fact that there is an appearance policy that applies broadly to CHOP non-exempt employees does not render those employees similarly situated to her. We conclude that Plaintiff's papers are deficient in meeting the *Symczyk* "modest factual showing" standard that employees with other principal work activities, who are required to wear a different uniform than herself and are not subject to Security Department policy and supervision are similarly-situated to her vis-à-vis an FLSA violation arising from CHOP's failure to compensate employees for time spent in the laundering of their work attire.[6]

---

[6] We are mindful of the authorities cited by Plaintiff in which conditional certification was granted on uniform maintenance claims to a broader classification of employees than just those in the named plaintiff's department or job title. Those cases, however, do not persuade us that conditional certification of all uniformed employees would be appropriate here. In *Dinkel v. Medstar Health, Inc.*, Civ. A. No. 11-00998 (CKK), 2012 WL 3062461, *7-*8 (D.D.C. July 29, 2012)), the court "exercise[d] its discretion to treat the matter as conceded" when the employer's opposition to the conditional certification motion "barely acknowledge[d] the existence of Plaintiffs' uniform maintenance claim, let alone provide[d] any meaningful argument why the Court should deny conditional certification as to this specific claim." The court provided no analysis of the claim, which appeared to seek certification of all non-exempt hourly employees working at nine hospitals. The lack of analysis of the substantive issues reduces the utility of this case on this proposition.

*(… continued …)*

## IV. CONCLUSION

For the reasons set forth above, we conclude that Plaintiff has made a "modest factual

---

With respect to *Outlaw v. Secure Health, L.P.,* No. 3:11cv602, 2012 WL 3150582 (M.D. Pa. Aug. 2, 2012), a licensed practical nurse at a nursing home sought conditional certification of a class that would include other hourly, non-exempt employees working at one or the other of the two nursing homes operated by the defendant. As here, the employer argued alternatively that any class should be limited to include only other LPNs. *Id.* at *6. Citing three district court cases in which courts rejected arguments that employees were not similarly situated because they worked in different jobs, at different locations, or were terminated at different times, the *Outlaw* court found Secure Health's argument "unconvincing." *Id.*

The cases cited by the *Outlaw* court do not help us resolve the issues presented as to this uniform maintenance claim. In *Beauchamp v. Penn Mut. Life Ins. Co.*, No. 10-8180, 2011 WL 326861 (E.D. Pa. July 29, 2011), the court rejected arguments that conditional certification should be denied because the employees held different jobs in different departments. *See Outlaw*, at *6. *Beauchamp*, however, dealt with claims under the ADEA arising from a reduction in force in which various employees from various departments were terminated pursuant to a central decision-making process. Those facts have little relevance to the issues presented by Goldstein's efforts to bring a disparate array of uniformed CHOP employees into her action regarding uniform maintenance efforts.

In *Taylor v. Pittsburgh Mercy Health Sys.*, No. 09-377, 2009 WL 2003354 (W.D. Pa. July 2009), the court rejected arguments that conditional certification should be limited to employees in the same department. *See Outlaw*, at *6. In *Taylor*, however, the court was considering a claim of unpaid overtime for additional time worked by employees, including during meal breaks where a hospital policy automatically deducted 30 minutes for a meal break and where there was evidence that the hospital "abandoned" its duty to ensure that non-qualifying meal breaks were not deducted from employees' pay. In that case the plaintiffs also presented affirmations from employees in various departments at the hospital that the court found created a reasonable inference of a similar situation. Again, the facts of *Taylor* bear little resemblance to the posture of Goldstein's case at this point.

Finally, the *Outlaw* court cited *Bishop v. AT &T Corp.*, 256 F.R.D. 503 (W.D. Pa. 2009) for the proposition that conditional certification should not be denied to a group that worked at different geographical locations with distinct operational procedures. *See Outlaw*, at *6. That claim also involved off-the-clock work where the court found no evidence of a distinction in the time-keeping practices of the four company locations.

The cases upon which the *Outlaw* court relied to reject the employer's contention that the uniform maintenance class should be limited to the plaintiff's department are inapposite to the facts of Goldstein's case.

showing," through reference to policies regarding the requisite security officer uniform that applies to all security guards, that other guards are similarly situated to her in that they have been required to present for work in a specific uniform in a "clean, well pressed" condition and that adherence to that common policy requires an expenditure of time for which CHOP does not compensate its security guard employees. Therefore, we grant Plaintiff's motion for the conditional class certification of non-exempt, hourly employees who worked in the Security Department at CHOP. Insofar as we do not find Plaintiff to have met her burden to show that she is similarly situated to employees outside of her department who are not required to present in the uniform that is unique among CHOP employees to Security Guards, we deny Plaintiff's motion for the conditional certification of a class that encompasses other hourly, non-exempt employees of Defendant. An appropriate order follows.